GEORGE F. DAVEY, INC. & another[1] *vs.* TOWN OF NORTON
& another.[2]

Bristol.    March 22, 1974. — April 29, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Equity Pleading and Practice,* Rehearing, Agreed facts. *Real Property,*
Removal of material.

In a suit in equity for declaratory relief as to the validity of an
amendment of a town's earth removal by-law which was appli-
cable to "all present and future holders" of removal permits and,
"recognizing" that specified materials were "an ever increasingly
precious commodity," prohibited the transportation thereof "out-
side the limits of the" town, this court determined that a brief
statement of agreed facts on which the suit had been submitted
was wholly inadequate to allow a decision of the issue raised, and
accordingly discharged the statement of agreed facts, vacated the
final decree, and remanded the case to the Superior Court for
further proceedings.   [191-196]

BILL IN EQUITY filed in the Superior Court on January
6, 1972.

A purported report of the suit was by *Frank E.
Smith,* J.   A final decree, from which the plaintiffs
appealed, was entered by *Mason,* J.

*Charles J. Hayes* for the plaintiffs.

*Robert I. Kalis* for the defendants.

GRANT, J.   The principal purpose of this bill in equity
brought against the town of Norton (town) and its board

---

[1] Davey and Edwards, Inc.

[2] The board of selectmen of the town.

of selectmen (selectmen) is to secure declaratory relief with respect to the validity of a 1971 amendment of the town's earth removal by-law (G. L. c. 40, § 21[17], as amended through St. 1967, c. 870). The case was submitted to a judge of the Superior Court on a brief statement of agreed facts. That judge ruled (in effect) that the challenged amendment was valid, ordered that a decree be entered dismissing the bill, and purported to "report the case." The plaintiffs did not at that time take any of the steps required by Rule 1:02(2) of the Appeals Court, 1 Mass. App. Ct. 883 (1972). Some two months later, following the retirement of the first judge, another judge of the Superior Court entered a final decree which expressly purported to declare the validity of the challenged amendment, and to dismiss the bill. The plaintiffs claimed an appeal from that decree. We find it unnecessary to decide whether the case is properly here under one or more of G. L. c. 214, §§ 19, 30A or 31A.

The original earth removal by-law of the town, as adopted in 1953, prohibits the removal of sod, loam, soil, clay, sand, gravel or stone from any land in the town not in public use except as authorized by a permit issued by the selectmen (§ I). "To protect the health, safety, convenience and welfare of the community and its inhabitants, to promote appropriate use of land and to protect the value, use and enjoyment of property" the selectmen may issue a permit "upon conditions[3] varying

---

[3] Attached to the statement of agreed facts are three pages of "Rules Regulating the Removal of Soil, Loam, Sand, and Gravel in the Town of Norton, effective immediately or upon renewal of current permit" which appear to have been " [p]assed [u]nanimously" by the then selectmen on October 1, 1970. We are not advised whether these rules and regulations were intended to have the status of "conditions" such as those considered in *Byrne* v. *Middleborough,* 364 Mass. 331, 332-333, 334 (1973), or were intended merely as practical advice from the selectmen as to the circumstances and conditions under which they would expect to entertain and grant an application

with . . . circumstances," some of which are expressly stated (§ II). Removal for certain purposes and transferals in certain circumstances are exempted from permit requirements (§ III).

At a special town meeting held on September 13, 1971, the town voted to amend the by-law by the addition of § IV, which appears to have been intended to take effect on January 1, 1972, and to apply to "all present and future holders of Earth Removal Permits." Section IV reads as follows: "To protect the health, safety, convenience and welfare of the community and recognizing that loam, soil, clay, sand and stone are an ever increasingly precious commodity the [t]own of Norton prohibits the transporting of any of the above listed outside the limits of the [t]own."[4]

By their bill brought on January 6, 1972, the plaintiffs seek to challenge the validity of § IV in general and of its application to their preëxisting earth removal operations in particular. See *Kelleher* v. *Selectmen of Pembroke,* 1 Mass. App. Ct. 174, 185-186 (1973); *Byrne* v. *Middleborough,* 364 Mass. 331, 334 (1973). They recognize in their brief that the burden is on them to show that the new section is unconstitutional or otherwise invalid if sought to be applied to their lands lying in the town. See *Wilbur* v. *Newton,* 302 Mass. 38, 39 (1938); *Seekonk* v. *John J. McHale & Sons, Inc.* 325 Mass. 271, 274 (1950); *Butler* v. *East Bridgewater,* 330 Mass. 33, 36 (1953); *Lexington* v. *Simeone,* 334 Mass. 127, 131 (1956); *Byrne* v. *Middleborough,* 364 Mass. 331, 331-332, 335 (1973). Yet, they have sought to present their

---

for a permit. Compare *Leach* v. *State Fire Marshal,* 278 Mass. 159, 165-167 (1932).

[4]We are told that § IV was approved by the Attorney General on September 24, 1971. We are not told whether there has been compliance with any of the requirements found in the sixth and seventh sentences of G. L. c. 40, § 32 (as most recently amended by St. 1967, c. 308). See *Goodwin* v. *Selectmen of Hopkinton,* 358 Mass. 164, 165, n. 2 (1970); *Byrne* v. *Middleborough,* 364 Mass. 331, 332 (1973).

case on a statement of agreed facts which occupies but one and a half typewritten pages of the record, does not purport to state all the facts which are or might be material to the controversy, and contains some statements of fact which might be thought to be inconsistent with admissions founds in the pleadings. The statement leaves us in almost total ignorance of the various factors which have been considered relevant in the earlier cases which have determined the validity or applicability of ordinances or by-laws concerned with earth removal, whether adopted under G. L. c. 40, § 21(17), as from time to time amended, or under what is now G. L. c. 40A. We point to a few of those factors, with the caveat, necessitated by present obscurities, that not all of them may be relevant to the circumstances of this case.

Although we are told that one plaintiff (George F. Davey, Inc.) has been engaged in earth removal operations since 1967 under various permits issued by the selectmen[5] and that the other plaintiff was issued permits for the years 1970, 1971 and 1972, we have no idea of the location or the extent of any earth removal operations which either plaintiff may actually have conducted prior to the intended effective date of the amendment of the by-law.[6] There is nothing to indicate the amount of

---

[5] It appears from a paper filed in the Supreme Judicial Court for Suffolk County on August 23, 1973, in No. 73-55 Equity that counsel for the parties have agreed that at some time following the filing of the claim of appeal the land of George F. Davey, Inc., was taken by the Commonwealth by right of eminent domain. The plaintiffs' brief advises us of that fact and states that that plaintiff "asserts a continuing interest in this case because in its action for assessment of damages the question of the validity of its permit will be raised." See *Robinson* v. *Commonwealth*, 335 Mass. 630, 631-632 (1957). As the defendants' brief does not challenge that assertion we shall proceed in this opinion on the basis that the defendants do not care to raise any point that the case has become moot as to that plaintiff.

[6] Contrast *Selectmen of Sudbury* v. *Garden City Gravel Corp.* 300 Mass. 41, 42, 44 (1938); *Wilbur* v. *Newton,* 302 Mass. 38, 39, 42 (1938); *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283, 283-284

earth materials already excavated or stockpiled by either plaintiff on the intended date.[7] We have no means of knowing whether the amount of materials, whether stockpiled or later excavated, which (but for the present controversy) would have been removed (presumably by trucks[8]) "outside the limits of the [t]own" (§ IV) would have been "more than such a trivial amount that the law . . . [would] not [have] consider[ed] it" (*Butler v. East Bridgewater*, 330 Mass. 33, 38-39 [1953]).[9] Nor do we know but what some other use of the plaintiffs' lands

(1939); *Saugus v. B. Perini & Sons, Inc.* 305 Mass. 403, 408 (1940); *North Reading v. Drinkwater*, 309 Mass. 200, 201 (1941); *Burlington v. Dunn*, 318 Mass. 216, 221, 223 (1945), cert. den. sub nom. *Dunn v. Burlington*, 326 U. S. 739 (1945); *Billerica v. Quinn*, 320 Mass. 687, 688 (1947); *Seekonk v. John J. McHale & Sons, Inc.* 325 Mass. 271, 272-273 (1950); *Wayland v. Lee*, 325 Mass. 637, 638, 639-640, 643 (1950); *Lexington v. Simeone*, 334 Mass. 127, 127-128 (1956); *Massachusetts Broken Stone Co.* v. *Weston*, 346 Mass. 657, 658, 661 (1964); *Stow v. Marinelli*, 352 Mass. 738, 739 (1967); *Goodwin v. Selectmen of Hopkinton*, 358 Mass. 164, 166-167 (1970); *Kelleher v. Selectmen of Pembroke*, 1 Mass. App. Ct. 174, 176-178, 182 (1973); *Byrne v. Middleborough*, 364 Mass. 331, 332 (1973).

[7] See *Butler v. East Bridgewater*, 330 Mass. 33, 39-40 (1953); *Kelleher v. Selectmen of Pembroke*, 1 Mass. App. Ct. 174, 184 (1973); *Byrne v. Middleborough*, 364 Mass. 331, 332 (1973).

[8] See *Wilbur v. Newton*, 302 Mass. 38, 42 (1938); *Burlington v. Dunn*, 318 Mass. 216, 221 (1945), cert. den. sub nom. *Dunn v. Burlington*, 326 U. S. 739 (1945); *Stow v. Marinelli*, 352 Mass. 738, 740-743 (1967); *Goodwin v. Selectmen of Hopkinton*, 358 Mass. 164, 167 (1970); *Glacier Sand & Stone Co. Inc.* v. *Board of Appeals of Westwood*, 362 Mass. 239, 241 (1972); *Kelleher v. Selectmen of Pembroke*, 1 Mass. App. Ct. 174, 178, 183-184 (1973).

[9] Compare *Saugus v. B. Perini & Sons, Inc.* 305 Mass. 403, 404-405 (1940); *Seekonk v. John J. McHale & Sons, Inc.* 325 Mass. 271, 272-273, 273-274 (1950); *Wayland v. Lee*, 325 Mass. 637, 640 (1950); *Butler v. East Bridgewater*, 330 Mass. 33, 35-36, 39 (1953); *Raimondo v. Board of Appeals of Bedford*, 331 Mass. 228, 229 (1954); *Goodwin v. Selectmen of Hopkinton*, 358 Mass. 164, 167 (1970); *Glacier Sand & Stone Co.* v. *Board of Appeals of Westwood*, 362 Mass. 239, 240-241 (1972); *Kelleher v. Selectmen of Pembroke*, 1 Mass. App. Ct. 174, 177-178 (1973).

would have been more valuable.[10]   Least of all do we
know whether there is any basis for the stated premise of
the amendment, that the earth materials referred to
therein "are an ever increasingly precious commodity" in
the town.   See *Joseph De Vries & Sons, Inc.* v. *Com-
monwealth,* 339 Mass. 663, 665 (1959).

It should be obvious from what has been said that we
are of the opinion that neither of the plaintiffs has yet
put forth "a set of definite facts . . . [upon which] a
court [can] decide a constitutional question with con-
fidence that relevant considerations have not been over-
looked" (*Bowe* v. *Secretary of the Commonwealth,* 320
Mass. 230, 246 [1946]).   We have not been asked to
order the bill dismissed for failure to set out a case
appropriate for declaratory relief.   See *Duane* v. *Quincy,*
350 Mass. 59, 61-62 (1966); *Johnson* v. *Framingham,* 354
Mass. 750, 754-755 (1968).   We join the parties in their
desire to resolve an apparent controversy, and the fact
that they have argued the case at some length leads us to
believe that the deficiencies in the present record can be
met in the course of further proceedings in the Superior
Court.   Accordingly, we shall discharge the statement of
agreed facts and remand the case for the factual deter-
minations necessary to put the case in proper perspec-
tive.   Compare *School Comm. of Springfield* v. *Board of
Educ.* 362 Mass. 417, 445-446 (1972); *Peace* v. *Peace,*
362 Mass. 536, 538-539 (1972).[11]

---

[10] See *Selectmen of Sudbury* v. *Garden City Gravel Corp.* 300
Mass. 41, 43-44 (1938); *Burlington* v. *Dunn,* 318 Mass. 216, 222
(1945), cert. den. sub nom. *Dunn* v. *Burlington,* 326 U. S. 739
(1945); *Lexington* v. *Simeone,* 334 Mass. 127, 128-129 (1956);
*Massachusetts Broken Stone Co.* v. *Weston,* 346 Mass. 657, 661
(1964).

[11] In the event that another statement of agreed facts should be
offered by the parties, the judge should make certain that the
statement contains all the facts which, in the light of this opinion,
may be relevant.   *School Comm. of Springfield* v. *Board of Educ.*
362 Mass. 417, 446 (1972).

We strongly urge the parties to consider certain matters which have not been argued before us. If by-laws such as the amendment in this case should proliferate from town to town, the Commonwealth could become effectively balkanized. Would such a result be permitted by anything found in G. L. c. 40, § 21(17), as amended, or by anything found in G. L. c. 43B, § 13 (inserted by St. 1966, c. 734, § 1), or in art. 89 of the Amendments to the Constitution of the Commonwealth? See also *H. P. Hood & Sons, Inc.* v. *Du Mond,* 336 U. S. 525, 531-539, 545 (1949).

The statement of agreed facts is discharged, the final decree is vacated, and the case is remanded to the Superior Court for further proceedings in conformity with this opinion. Costs of appeal (or on report) are not to be awarded to any party.

*So ordered.*