AUGUST TODA & others[1] *vs.* BOARD OF APPEALS
OF MANCHESTER.

Essex.   April 11, 1984. — June 28, 1984.

Present: BROWN, CUTTER, & SMITH, JJ.

*Zoning,* Material removal. *Real Property,* Removal of material. *Municipal
    Corporations,* Ordinances and by-laws, Earth removal.

A quarrying operation which included excavation of rock by blasting and the
    crushing, sorting, and commercial sale of rock extended beyond the
    scope of a town's by-law regulating earth removal and was required to
    comply with the town's zoning by-law as well. [319-321]

CIVIL ACTION commenced in the Superior Court Department
on December 16, 1982.

The case was heard by *Tuttle,* J., on a motion for summary
judgment.

*James T. Ronan (Mary P. Harrington* with him) for August
Toda & others.

*Ellen Flatley* for Board of Appeals of Manchester.

*Loyd M. Starrett (Terry S. Kogan* with him) for Masconomo
Realty Trust.

BROWN, J. Believing that a rock quarrying operation near
their homes violated their local zoning by-law, a group of
residents of the town of Manchester (town) sought relief from
the building inspector. The building inspector declined to act,
based on his determination that earth removal operations were
governed solely by an earth removal by-law enacted as part
of the town's general by-laws and not by the zoning by-law.
The board of appeals (board) upheld the decision of the building
inspector on August 23, 1982. The residents then appealed the

---

[1] James T. Ronan, Leroy Thomas, Gertrude Thomas, James Osborne,
Joan Osborne, William McCarthy and Donna McCarthy.

decision of the board to the Superior Court pursuant to G. L. c. 40A, § 17. The appeal was dismissed by summary judgment on the ground that the board had no jurisdiction over earth removal operations in the town.[2] We conclude that, regardless of the scope of the board's jurisdiction over earth removal, the operations in question extend beyond earth removal and into an area within the jurisdiction of the board. We therefore reverse the judgment and direct that summary judgment be entered for the plaintiffs.

The town initially passed a zoning by-law in 1945, amended it over the years, and substantially revised it in 1978. A separate earth removal by-law was passed in 1953 and redrafted in 1963. See art. XII of the General By-laws of the Town of Manchester. Under art. XII, the selectmen have jurisdiction over earth removal operations and they are the body that issues earth removal permits and monitors compliance with whatever conditions are imposed.[3]

Bass River Realty Trust (Bass River) applied for an earth removal permit for a five-acre site on September 8, 1978. The selectmen, on advice of town counsel, suggested that Bass River initially seek a use variance from the board of appeals.[4] In an application to the board of appeals for a variance or other relief, Bass River stated that it was in the process of applying for an earth removal permit "in order to (1st) clean up the area and (2d) to prepare a site for usage under the zoning code." In a decision rendered November 30, 1978, the board of appeals noted that the selectmen had jurisdiction over earth removal

---

[2] The plaintiffs also filed a motion for summary judgment, which, by implication, was denied.

[3] The selectmen can only grant a permit if they determine that the earth removal operation "will not be contrary to the best interests of the Town." That by-law includes enumerated criteria which, if met, establish that the operation fails to meet this standard. For example, "removal of earth material shall be considered contrary to the best interests of the Town which . . . [w]ill produce noise, dust or other effects observable at the lot lines in amounts seriously objectionable or detrimental to the normal use of adjacent property." Article XII, § 2(a)(2).

[4] The property is in a "limited commercial" district; earth removal is not a listed permitted use in any zoning district.

permits but went on to put its imprimatur on Bass River's project in the form of the grant of a special permit to prepare the site for a use permitted under the zoning by-law.

On January 9, 1979, the selectmen granted an earth removal permit to Bass River. The permit included the following statement:

> "It has been and is the consensus of this Board that any commercial earth removal operations, such as this, requires approval from the Manchester Board of Appeals whereas this type activity is not a use allowed in a Limited Commercial District as specified under the Manchester Zoning By-Law. You have obtained a variance from the Zoning Board of Appeals to seek an Earth Removal Permit from the Board of Selectmen."

Both parties are agreed that no variance was ever granted; the town claims that the reference to a variance was simply the product of an administrative error. The earth removal permit has been renewed annually and the erroneous reference to the granting of a variance was deleted in 1983. The town currently contends that earth removal operations are under the exclusive jurisdiction of the selectmen and that no variance or other permission from the board of appeals need be obtained.

Earth removal operations were begun on the site in the summer of 1980 by a successor to Bass River known as Mascanomo Realty Trust (Mascanomo). It is uncontested that these operations include the excavation of rock through blasting and the crushing, sorting, and commercial sale of rock on the premises.

Municipalities may regulate earth removal through their zoning ordinances or by-laws. See *Glacier Sand & Stone Co.* v. *Board of Appeals of Westwood,* 362 Mass. 239, 242 (1972). Since 1949, municipalities have also had the option of regulating earth removal through a general by-law or ordinance. See G. L. c. 40, § 21(17), inserted by St. 1949, c. 98, and most recently amended by St. 1973, c. 317.[5] See generally *Byrne* v.

---

[5] This enabling legislation was passed in order to allow municipalities to regulate earth removal even if they had not adopted comprehensive zoning

*Middleborough*, 364 Mass. 331, 333-334 (1973); *Beard* v. *Salisbury*, 378 Mass. 435, 438-439 (1979). These two modes of regulation need not be mutually exclusive. Thus, a zoning by-law may confine earth removal to specified zoning districts, while a separate earth removal by-law may govern how earth removal is carried out within those districts.

Article XII of the Manchester general by-laws establishes a fairly comprehensive earth removal regulatory scheme.[6] The zoning by-law, on the other hand, is virtually silent on the subject; indeed, the one reference to earth removal in the zoning by-law is an acknowledgement that art. XII exists. The defendants argue that in such circumstances the earth removal by-law was intended to be the sole mode of regulation of earth removal. See *Goodwin* v. *Selectmen of Hopkinton*, 358 Mass. 164, 168-170 (1970). The argument continues that earth removal is not a prohibited use under the zoning by-law, despite the fact that earth removal is not listed as a permitted use in any district.[7]

On the present record, we need not decide if the defendants' view of the relationship between the two by-laws is correct. Even if earth removal is exempt from the zoning by-law, it does not follow that expansions of the use of land beyond mere earth removal are also exempt.[8] For example, construction of a

---

schemes. *Byrne* v. *Middleborough*, 364 Mass. 331, 333-334 (1973). 1949 House Doc. No. 117, at 3.

[6] We note in passing that, while the earth removal by-law was explicitly drafted to govern the extraction of rock, the enabling legislation speaks only in terms of "the removal of soil, loam, sand or gravel." G. L. c. 40, § 21(17). Neither party has raised any question whether the rock excavation aspects of art. XII rest on sufficient authority in the enabling act or alternatively in the Home Rule Amendment (art. 2, § 6, of the Amendments to the Constitution of the Commonwealth, as amended by art. 89 of the Amendments). We find no occasion to address any such question here.

[7] On this record, we need not decide whether any land owner desiring to engage in earth removal must, in addition to obtaining a permit under the comprehensive earth removal by-law, also obtain a use variance because earth removal is not a permitted use in any district. The by-law perhaps may be clarified before any such decision is necessary.

[8] Article XII, § 4(f), states: "No permit issued hereunder shall authorize any activity which is in violation of any Zoning By-law of the Town."

permanent building would have to comply with the zoning by-law, no matter that the building is to be associated with, or accessory to, an earth removal operation. The use of Mascanomo's property has been expanded beyond mere earth removal to include the processing of rock and the commercial sale of that rock. We conclude that the scope and nature of such a quarrying operation extends well beyond "earth removal" as that term is contemplated in art. XII.

In *Butler* v. *East Bridgewater,* 330 Mass. 33, 38 (1953), it was held that the intent of the earth removal enabling act "was to authorize towns to control the entire process of severing the material and conveying it from the premises. . . ." The crushing of stone is not, however, a necessary element of the earth removal process.[9] Compare *First Crestwood Corp.* v. *Building Inspector of Middleton,* 3 Mass. App. Ct. 234, 236 (1975) (crushing of stone held an illegal expansion of the preexisting, nonconforming use of stone excavation and removal). Cf. *Wilson* v. *Pencader Corp.,* 57 Del. 290, 295-298 (1964) (holding that a permitted use of excavation of rock for commercial purposes did not include the crushing of rock, although rock crushing might be allowed as an accessory use). Such an expansion of the use beyond earth removal must comply with the zoning by-law and is allowable only under a use variance. Contrast *Goodwin* v. *Selectmen of Hopkinton,* 358 Mass. at 167 (no processing of earth materials done on the premises).

We hold that the board of appeals did have jurisdiction to entertain the plaintiffs' request for relief. The judgment is re-

---

Thus, art. XII was not intended to supplant zoning simply because a primary use of the property involves earth removal.

Historically, earth removal regulation was initiated to curb the effects of the uncontrolled stripping away of topsoil and other earth materials. See *Burlington* v. *Dunn,* 318 Mass. 216, 221, cert. denied, 326 U.S. 739 (1945); *Butler* v. *East Bridgewater,* 330 Mass. 33, 36 (1953); *Beard* v. *Salisbury,* 378 Mass. 435, 439-440 (1979); Dawson, Earth Removal and Environmental Protection, 3 Envtl. Aff. 166 (1974). Thus, such regulation, like that of wetlands, was addressed to a particular environmental problem and was not meant to provide a general land use control mechanism. See *Lovequist* v. *Conservation Commn. of Dennis,* 379 Mass. 7, 13-14 (1979).

[9] We need not reach the question whether the sale of the crushed rock on the premises itself violates the zoning by-law.

versed and a new summary judgment for the plaintiffs is to be entered remanding the case to the board of appeals for a decision on the merits.

*So ordered.*