Hely, J.
A. Introduction
These three zoning cases involve homeowners who are also tractor truck owners. There is a common question of law: whether a homeowner in a residence district can store a tractor-trailer truck or just a tractor truck at his home as an accessory use in a residence district under the Town of Seekonk zoning by-law. The Zoning Board of Appeals and the Inspector of Buildings and Zoning Enforcement Officer of Seekonk have determined that the use is not a permitted accessory use in a residence district. These decisions of the local zoning officials were lawful under the Seekonk by-law and the Massachusetts case law on accessory uses.
By agreement of the parties and the court the three cases were consolidated for trial. Counsel have assisted the court with a fair and efficient presentation of the evidence and legal arguments. Findings will be set forth below followed by a discussion of the zoning by-law, the controlling legal principles, and additional findings.
B. The Paolo Case
Joseph and Angela Paolo own and live in a house at 71 Mill Road in a residence district in Seekonk. Mr. Paolo is the owner and operator of a ten-wheel Kenworth tractor truck. He stores the truck at his home three or four nights per week. The tractor is eight feet wide, twelve feet and ten inches high, and almost thirty feet long.
Mr. Paolo uses the tractor truck in his work to pull tank trailers. The trailers commonly contain hydrogen, helium, nitrogen or argon. Although he does not own a trailer, Mr. Paolo frequently parked a trailer with his tractor at his residence at least until November 30, 1999. Mr. Paolo parks the tractor at his home because he needs a safe, secure place with an electrical connection and because it is the most convenient place *776 for his work and transportation needs. On weekends, Mr. Paolo sometimes stores his tractor at a chemical company in Fall River.
Paul Stringham is the Seekonk Inspector of Buildings and Zoning Enforcement Officer. In October 1999, Mr. Stringham issued a written cease-and-desist order to Mr. Paolo ordering him to cease violating the zoning by-law by storing a commercial tractor or trailer in the residence district. Mr. Stringham also told Mr. Paolo that he could apply to the Seekonk Zoning Board of Appeals for a special permit to store the tractor and trailer. Mr. Paolo did so.
Mr. Paolo’s application to the Zoning Board of Appeals requested a special permit for an accessory use park his truck on his property because this is his means of transportation. Mr. Paolo simultaneously appealed the cease-and-desist order to the Board of Appeals. The Zoning Board of Appeals held a hearing on Mr. Paolo’s matter on November 30, 1999. In a decision dated December 14, 1999, the Board upheld the Inspector of Buildings and Zoning Enforcement Officer’s order and denied Mr. Paolo’s special permit application. Mr. and Mrs. Paolo have appealed the Board decision to this court under G.L.c. 40A, Sec. 17.
At about the time of the Board of Appeals hearing, Mr. Paolo stopped storing a trailer at his residence. He continues to regularly store his tractor truck there.
C.The Cota Case
Carlos and Cynthia Cota own and live in a house at 75 Arcade Avenue in a residence district in Seekonk. Mr. Cota is a self-employed truck driver. He owns a tractor-trailer truck through a corporation. Mr. Cota is the sole shareholder of the corporation. Mr. Cota regularly parks the tractor-trailer at his home. The tractor has ten wheels. The tractor is about fifteen feet long, eight feet wide and twelve feet high. The flatbed trailer is forty-feet long and eight feet wide. When connected, the tractor-trailer is fifty-four feet long.
Mr. Cota uses his truck to haul bricks and steel, mostly for a steel company located elsewhere .in Seekonk. Most of his trips are day trips. Mr. Cota’s home is the only place that he stores his truck when he is not working. He had special wiring put in at his home to connect to the tractor engine. This is necessary to keep the engine warm for proper starting. Mr. Cota uses his home to store the truck because it is less costly and more convenient than anywhere else and because his home gives him the electrical connection and better security and control over the truck.
In June and August 1998, the Town gave Mr. Cota written notice that his parking of his tractor and trailer at his residence violated the Town’s zoning by-law. Mr. Cota has continued to park his tractor and trailer at his residence. The Town filed an enforcement action with the court under G.L.c. 40A, Sec. 7, seeking an injunction ordering Mr. and Mrs. Cota to refrain from parking the tractor and trailer at the property.
D.The Muldoon Case
Roy Edward Muldoon, Jr. and Rita Muldoon, his mother, own a house at 46 Brook Street in a residence district of Seekonk. Mr. Muldoon lives in the house. Mr. Muldoon owns two tractor-trailer trucks. He regularly stores them at his home. The trailers are dump trailers. Mr. Muldoon uses the tractor-trailers to haul sand and gravel. The tractors have ten wheels. The tractors are each eighteen feet long, eight feet wide and twelve feet tall. The tractor-trailer combinations are each fifty-three feet long. One of the tractor-trailers is not presently registered.
Mr. Muldoon operates his trucking business from-his home. He travels in Massachusetts, Connecticut and Vermont in his work. Mr. Muldoon keeps his tractor-trailers at home for convenience and for security for the trucks.
In April and October 1998, the Town gave written notice to Mr. Muldoon that his storage of the tractor-trailer trucks at the residence violated the zoning by-law. The Town’s enforcement action in this court seeks and injunction against this continued use under G.L.c. 40A, Sec. 7.
E.The Application of the the By-Law to These Cases and the Accessory Use Issue
The “General Provisions” portion of the Swansea Zoning By-Law includes Section 4.1. This section states in part that “¡n]o structure or land shall be hereafter used . . . unless in conformity with the regulations herein specified for the district in which it is located, except as otherwise provided.” In other words, a use in a district is a prohibited,use unless it is identified in the by-law as a permitted use, or is permitted by special permit, or is otherwise exempt under a particular section of the by-law. See Harvard v. Maxant, 360 Mass. 432, 436 (1971); Building Inspector of Chelmsford v. Belleville, 342 Mass. 216, 217-18 (1961).
The Paolos, Cotas and Muldoons all live in residence districts. Under Section 6.1 of the by-law, there are six uses that are permitted in residence districts without approval by the Zoning Board of Appeals: (1) single-family dwelling; (2) mobile home on the site of a residence destroyed by fire or other natural holocaust for up to twelve months while the residence is rebuilt; (3) accessory buildings and uses; (4) commercial greenhouses on lots over 45,000 square feet; (5) farms devoted principally to the raising of crops; and (6) farms on parcels of more than five acres devoted to raising livestock and subject to certain other limitations. There are other uses that are permitted in residence districts under Section 6.2 if approval is obtained from the Zoning Board of Appeals, but none of these uses has any bearing on this case.
Each of the truck owners contends that his use of his residence lot to park his truck when he is at home is permitted under Section 6.1(3) as an accessory use, *777 a use that is accessory to his primary use of the land for a single-family dwelling.
Under established Massachusetts case law, an accessory use must be “customarily incidental” to the primary use. Harvard v. Maxant, 360 Mass. 432, 438-40. If the primary use is a single-family residence, the accessory use must be one that is either necessary or “commonly to be expected” with such a residence. Id. at 438. An accessory use must be both “subsidiary to the primary use of the locus and related to that primary use.” Gallagher v. Board of Appeals of Acton, 44 Mass.App.Ct. 906, 907 (1997); see Henry v. Board of Appeals of Dunstable, 418 Mass. 841, 845 (1994). The use must have “a reasonable relationship with the primary use” and be “attendant or concomitant” to the primary use. Harvard v. Maxant, 360 Mass. at 438.
For storage of a vehicle to be an accessory use on a residential lot, the vehicle must be of a type that is “customarily kept on residential lots” in the town or in the Commonwealth. Building Inspector of Falmouth v. Gingrass, 338 Mass. 274, 276 (1959). In determining whether a claimed accessory use is customarily incidental to the primary use, the local zoning authority must consider whether it is usual or common to maintain the use in question in connection with the primary use of the land. Harvard v. Maxant, 360 Mass. at 438. The use “should be more than unique or rare, even though it is not necessarily found on a majority of similarly situated properties.” Id. at 439.[1] Tractor trucks and tractor-trailer rigs are not customarily or commonly kept on residential lots in Seekonk. The weight of the evidence in this case is that this is not a customary or common use on residential lots. The current Inspector of Buildings and Zoning Enforcement Officer has consistently informed truck owners that they are in violation of the by-law whenever he has had a reasonable basis to believe that there has been storage of a tractor or tractor-trailer in a residence district over a substantial time period. Under the Seekonk by-law and the established Massachusetts case law on accessory uses, the storage of a tractor truck or tractor-trailer does not qualify as a use that is incidental to the primary use of a lot as a residence in a residence district.
The truck owners’ evidence of several other trucks on residential lots falls short of showing that storage of large commercial vehicles is customary in residential districts in Seekonk. As in any town, trucks can often be found making deliveries or service calls to residences. Some of the photographs may show actual long-term storage of trucks in residence districts. The court has no doubt that other truck owners have from time to time violated the by-law and stored their trucks in residential districts. The fact that others have engaged in this practice is insufficient to show that this is a customary accessory use in Seekonk residence districts.
Some of the truck owners in this case argue that they use their truck tractors to get back and forth from home and work in the same way that other residents use vans, pickups and sport utility vehicles. A tractor truck, however, is different in kind. Unlike a family-size van, pickup or sport utility vehicle, a tractor truck is not designed for multiple commercial and personal uses. A tractor truck is designed to haul commercial loads in long trailers. Tractor trucks are much larger and generally much noisier than multi-use personal vehicles. Local zoning officials also could properly consider safety factors in determining whether to permit such large vehicles to be stored in residential districts. The evidence at the trial has convinced the court that the Inspector of Buildings and Zoning Enforcement Officer and the Board of Appeals acted lawfully in these three cases when they determined that storing a tractor truck or tractor-trailer is not a permitted accessory use. in a residential district under the Seekonk zoning by-law.[2]
The court recognizes that not permitting the truck drivers in these cases to park their tractor-trucks and tractor-trailers at their homes will cause them economic hardship and inconvenience. Negative economic consequences to some individual lot owners are the inevitable result of any comprehensive zoning by-law. The Town’s decision to adopt a zoning by-law that restricts residence district lots to certain specified uses was a legally permissible legislative policy choice for the voters of the Town.
F. The Vagueness Claim
The truck owners also contend that the zoning by-law is too vague to give them adequate notice of what types of vehicles are not permitted as an accessory use in a residential district. Vague laws violate due process “because individuals do not receive fair notice of the conduct proscribed” and because they engender the possibility of arbitrary and discriminatory enforcement. Caswell v. Licensing Commission for Brockton, 387 Mass. 864, 873 (1983); see O’Connell v. Brockton Board of Appeals, 344 Mass. 209, 212 (1962). A law is not unconstitutionally vague, however, if it requires a person “to conform his conduct to an imprecise but comprehensible normative standard so that... [persons] of common intelligence will know its meaning.” Commonwealth v. Orlando, 371 Mass. 732, 734 (1977).
The by-law in question is not unconstitutionally vague. A zoning by-law may permit use of a lot only for a residence and for uses that are accessory to the residence use. Such a by-law cannot reasonably be expected to list every conceivable use that is or is not accessory to the primary use. See Building Inspector of Chelmsford v. Belleville, 342 Mass. 216, 217 (1961). The term “accessory use” has a well-established meaning in the law. See Part E, above. A zoning by-law that permits only a residence and uses that are accessory to the residence gives lot owners and local authorities *778 an objective, understandable and sufficiently definite standard for determining what is permitted.
G. Order
In Joseph Paolo, et al v. Town of Seekonk et al., CA A00-00004, a judgment will enter affirming the December 14, 1999, decision of the Seekonk Zoning Board of Appeals.
In Town of Seekonk v. Carlos Cota et al., CA C98-01482, and Town of Seekonk v. Roy Muldoon, Jr. et al., CA B99-00194, a permanent injunction will issue in each case prohibiting the defendants from storing any tractor truck or truck trailer on any lot in a residence district in Seekonk after May 10, 2000.

Although they do not control the present case, the following cases provide examples of vehicle or equipment storage that were found to be not permitted under a zoning by-law: Barboto v. Board of Appeal of Chelsea, 355 Mass. 264, 266 (1969) (garage for dump trucks not permitted as a “community garage” in a residential district; community garage, like an accessory garage in a residential district, was limited to the “parking of motor vehicles one would normally use as family or pleasure vehicles and would have at one’s place of residence”); Building Inspector of Chelmsford v. Belleville, 342 Mass. 216, 217-18 (1961) (storing heavy equipment not authorized as one of the permitted uses in a residential district; accessory use not discussed); Building Inspector of Falmouth v. Gingrass, 338 Mass. 274, 276 (1959) (garage for storing sea plane not an accessory use in residence district); Colabufalo v. Public Buildings Commissioner of Newton, 332 Mass. 748 (1955) (storage of gravel trucks and other construction equipment in and near a garage in a residential district was a violation of the by-law and not protected as a prior nonconforming use); Albee Industries, Inc. v. Inspector of Buildings of Waltham, 10 Mass.App.Ct. 858 (1980) (upheld finding that storage of twenty-nine pieces of heavy equipment and eighteen snow plows was a prohibited storage yard rather than an accessory use in a commercial district). See Annot., 54 ALR 4th 1034, 1063-65 (1987 and Supp. 1999).

The Zoning Board of Appeals decision in the Paolo case discusses the negative effects of Mr. Paolo's storage of his tractor and trailer at his residence. The court does not construe the Board of Appeals decision as suggesting that storing the tractor without a trailer would qualify as a customary accessory use in a residential district.